## DAVID G. LINVILLE ET AL. V. JOHN G. LEININGER, TRUSTEE OF COLUMBIA TOWNSHIP, ETC.

*Liability of Township Trustee.*—Such an officer is not held liable as a private trustee, but is only liable on his official bond as any other public officer. A public officer, required to give bond for the proper payment of money coming into his hands, is not a mere bailee of the money, exonerated by the exercise of ordinary care and diligence. His liability is fixed by his bond, and even if money is stolen

3

from him without his fault, this does not release him from his obligation to make such payment. The technical legal title to money collected is in himself, and not in the public. The amount he receives measures the amount for which he is liable on his bond, and which he can officially expend; and he must manage his trust with reference thereto, holding himself ready to apply that sum necessary to public uses under his supervision, according to law; but with reference to any particular or specific money, no matter when received, he owes the public no duty, and the public can make no demand therefor. In case of default in payment, resort must be had to the bond, if the individual responsibility of the officer is not adequate. And the rule applies where the trustee has used the money in his private business.

Filed April 6, 1881.

Appeal from Whitley Circuit Court.

Opinion of the court by Mr. Justice Woods.

The appellee, as trustee of Columbia township, filed his complaint against Josiah B. McDonald, executor of the last will of George Deer, deceased, and thirty-two others, showing that the plaintiff was, and since the 10th day of October, 1876, had been, the duly elected, qualified and acting trustee of said township; that on the second Tuesday of October, 1870, said George Deer was elected trustee of said township, and gave bond and duly qualified as such, and served for two years, and was in October, 1872, re-elected, and having given bond and qualified, entered upon the duties of his said office for the second term. From this point the averments of the complaint are substantially as follows, viz.:

That when first elected, said Deer was poor, owning only about $90 worth of personalty and $390 worth of real estate, encumbered for an amount unknown to the plaintiff. That during his official term, said Deer received large sums of money belonging to the tuition, special school, road, township and dog funds of said township, and unmindful of the trust imposed in him, wrongfully and unlawfully invested large amounts of said trust funds in his own private business, and continued to use the same in his said business from the time they came into his hands until his death, to-wit: in the business of making wagons, etc., and in the purchase of the personal property that he had on hands at the time of his death; a bill of particulars of which is filed and made a part of the complaint as exhibit A. That he unlawfully loaned said funds to divers persons and took notes therefor payable to himself, but of whom and for what amounts is not fully known to the plaintiff, except as shown in exhibit C, filed herewith and made a part hereof; that the

business of said Deer during said time was unprofitable and did not afford any great income, scarcely enough to maintain him and his family; and said trust funds were used by him as aforesaid and were converted and put into the property named as his assets by his executor; that on the 6th day of August, 1874, said Deer died testate, and said McDonald was duly appointed and qualified, and is now acting as executor of the will; that at his death, said Deer was seized of one lot and house in which he had unlawfully invested a part of said funds, (for particulars of which see exhibit " D " filed and made a part hereof); that nearly all of the notes, *choses in action*, and moneys on hand at his death were a part of said funds, (a bill of particulars of which, marked exhibit " E," is filed and made a part hereof); that said executor inventoried and sold said property, collected the accounts, notes and *choses in action*, and took possession of said money, which were in fact the money and property of said township, so unlawfully converted and used by said Deer as aforesaid, and has large amounts of money on hand and loaned out, and awaiting the order of this court, (of which exhibit " G " is filed and made a part hereof), which are the property of said township and the proceeds of the funds so used by said Deer; that said Deer at his death was largely indebted to the other defendants, who are made parties to answer as to their interest in the premises, and was indebted to said township in the sum of $5,419.-16, of which there still remains about $2,200 unpaid. Wherefore, the plaintiff prays that the balance due said township be made a preferred claim against the estate of said Deer, and the executor ordered to pay over to the plaintiff all the moneys on hand, collected from said accounts and notes and by the sale of said property, upon said indebtedness to said township, and pay over, as fast as he collected the same, all further sums received by him until the claim of said township is paid in full, and for all other proper relief.

The appellant, Linville, and some of his co-defendants, filed a demurrer to this complaint on the ground that it did not state facts sufficient, which demurrer the court overruled, and said defendants excepted. Linville alone appealed, but none of his co-defendants have declined to join in the appeal.

The demurrer should have been sustained.

We do not overlook the well-established principle of equity

jurisprudence within which there was an evident attempt to frame this complaint, namely: "That whenever the trustee has been guilty of a breach of the trust, and has transferred the property by sale or otherwise, to any third person, the *cestui que trust* has a full right to follow such property into the hands of such third person, unless he stands in the predicament of a *bona fide* purchaser, for a valuable consideration, without notice, and if the trustee has invested the trust property or its proceeds, in any other property into which it can be distinctly traced, the *cestui que trust* has his election either to follow the same into the new investment, or to hold the trustee personally liable for the breach of the trust." And "where a part of the funds of the *cestui que trust* have been mixed up with other funds exclusively belonging to the trustee in the new purchase or investment," "there may be ground to hold the trust funds in charge *pro tanto* therein."

These are extracts from the opinion of Justice Story in *Oliver* v. *Piatt*, 3 Howard 333 (Leading Cases on Trusts, 18), wherein numerous authorities are cited. But the doctrine so announced as applicable to ordinary trustees, including agents, bailees and the like, is not applicable to public officers who give bond to secure a just and full accounting for the moneys which come into their management and control.

A township trustee is required to "execute a bond conditioned as in ordinary official bonds, with at least two freehold sureties, with a penalty of not less than double the amount of money which may come into his hands at any time during his term by virtue of his office." 1 Rev. Stat. 1876, p. 900, sec. 5. In *Halbert* v. *The State ex rel. etc.*, 15 Ind. 125, Worden J., speaking for the court, says: "It is well established that a public officer, who is required to give bond for the proper payment of moneys that may come into his hands as such officer, is not a mere bailee of the money, exonerated by the exercise of ordinary care and diligence; but that his liability is fixed by his bond, and that the fact that the money was stolen from him without his fault, does not release him from his obligation to make such payment."

In *Morbeck* v. *The State ex rel. etc.* 28 Ind. 86, this case was approved and the doctrine applied to the case of a township trustee; and in *Rock* v. *Stinger*, 36 Ind. 346, the same judge, speaking for

the court, after reaffirming the doctrine and its applicability to a township trustee, says: Under these circumstances, as the trustee is not a mere bailee, it would seem that the legal technical title to the money in his hands is in himself. Suppose a township trustee should die with moneys received by him as such, in his hands; can it be claimed that the money, even if the specific bills or coins received by him officially could be identified, would go to his successor and not to his administrator? We think it quite clear, in the case supposed, that the money would go to the administrator, because, simply, the title was in the trustee. This view is fully sustained by authority. In the case of *Inhabitants of Colerain* v. *Bell*, 9 Met. 499, it was held that "the specific money received by a collector, in the collection of taxes, is his money and not that of the town."

But, say counsel for the appellee, in substance: This officer was a trustee, so named in the law, and the duties of a trustee are imposed on him, and consequently the law of trusteeship must apply to his transactions. There is no question that in the general management of his office, and in the discharge of its duties, he is responsible as such, and may well be called a trustee; but in reference to the public money, which comes into his hands, it is not so. That, at the moment of receipt, becomes his own. The amount he receives measures the amount for which he is liable on his bond, and the amount which he can officially expend; and he must manage his trust with reference thereto, holding himself ready to apply that sum necessary to the public uses under his supervision according to law; but with reference to any particular or specific money, no matter when received, he owes the public no duty and the public can make no demand thereon.

This conclusion necessarily results from the doctrine enunciated in the cases referred to *supra*, and the extraordinary liability imposed on public officials and their bondsmen, beyond any which is enforced against an ordinary trustee, or private agent or bailee, can be maintained consistently on no other theory.

It being conceded that the public officer, under bonds to account therefor, is not a bailee or trustee, but the owner of the moneys which come into his hands by virtue of his office, there is no room for an application of the equitable principle which the appellee endeavored to invoke, for that principle applies only in case of

trusts, and to the subject matter of the trust. Repeating the expression used in *Halbert* v. *The State, supra,* the "liability" of an officer who is required to give bond "is fixed by his bond," and, in case of default, resort must be had to that bond, if the individual responsibility of the officer is not adequate. There is no principle of equity, or rule of law or statute, by which the preference asked for can be allowed.

Judgment reversed, with instruction to sustain the demurrer to the complaint.

Olds & Sickafoose, for appellant.

Marshall & McNagny, for appellee.